UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| SARA ADAM, et al., | CIV. NO. 2:14-02795 WBS DAD |
| Plaintiffs, | MEMORANDUM AND ORDER |
| v. | |
| BRET BRZYSCZ, CITY OF ROSEVILLE, COUNTY OF PLACER, CITY OF SACRAMENTO, COUNTY OF SACRAMENTO, and DOES 1 THROUGH 50, | |
| Defendants. | |

----oo0oo----

Twenty-six individual plaintiffs brought this action against defendants Bret Brzyscz, the City of Roseville, the County of Placer ("Placer County"), the County of Sacramento ("Sacramento County"), and the City of Sacramento pursuant to 42 U.S.C. § 1983 for violations of the Fourth Amendment and related state law claims. Presently before the court are the motions of defendants Placer County, Sacramento County, and the City of Sacramento to dismiss pursuant to Federal Rule of Civil Procedure

12(b)(6).  (Docket Nos. 5, 7, 8.)

I.   Factual and Procedural Background

The allegedly unlawful actions that plaintiffs challenge in this case resulted from their relation to plaintiff Samuel Duran.  (See Compl. ¶¶ 51-52 (Docket No. 1).)  On October 25, 2013, police officers pursued Samuel Duran to the home of plaintiff Donna Sandoval in Roseville, California.  (Id. ¶ 65.)  There, Samuel Duran was struck by gunfire, allegedly while he was attempting to surrender.  (Id. ¶ 66.)  Sometime later, plaintiff Mikkayla Gutierrez allegedly posted a video recording that depicted the shooting on the internet.  (See id. ¶¶ 162, 188.)

Approximately one month later, around 7:00 a.m. on November 20, 2013, Roseville Police Officer Bret Brzyscz, along with other unidentified officers, simultaneously executed search warrants at five different residences owned or occupied by one or more plaintiffs.  (See id. ¶¶ 75-189.)  Plaintiffs allege the officers used excessive force against them during the searches, inflicting various injuries to person and property as well as causing emotional distress.  (See id. ¶¶ 56, 58.)  Plaintiffs allege the raids were conducted in retaliation for Mikkayla Gutierrez's video post, and the fact that officers seized various electronic devises during the raids shows an attempt to cover up any other photographs or video recordings plaintiffs may have made depicting Samuel Duran's shooting on October 25, 2013.  (See id. ¶¶ 51-52, 162, 184, 188.)

Plaintiffs further allege that the warrants authorizing these searches and seizures were issued based on a finding of probable cause supported by material misstatements or omissions

2

made by two officers on November 14, 2013.  Plaintiffs allege that Officer Brzyscz and Officer Ken Nakamura[1] either intentionally lied or made these misstatements with reckless disregard for the truth.  (See id. ¶¶ 42-44, 46-48.)  Without these misstatements, plaintiffs allege there was not probable cause to support the searches and seizures.  (Id. ¶¶ 45, 48.)

The only claims brought against these moving defendants are the third, sixth and seventh claims of the Complaint. Plaintiffs' third claim for relief under § 1983 alleges that defendants had "policies, procedures, customs, and practices" that permitted or encouraged unreasonable searches and seizures in violation of the Fourth Amendment.  (Id. ¶¶ 220-30.) Plaintiffs' sixth and seventh claims assert claims under state law for intentional infliction of emotional distress and negligence against the municipal defendants.[2]

Placer County, Sacramento County, and the City of Sacramento each move separately to dismiss all plaintiffs' claims against them for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).  The City of Sacramento initially moved only to dismiss plaintiffs' sixth and seventh claims, but at oral argument on April 20, 2014, the City of Sacramento joined in moving to dismiss plaintiffs' third claim as well.

///

---

[1]  Plaintiffs have not named Officer Nakamura as a defendant in this action.

[2]  Plaintiffs assert claims for assault and battery but only against Officer Brzyscz, not against the municipal defendants.  (Compl. ¶¶ 231-39.)

1  II. Discussion
2         On a motion to dismiss for failure to state a claim
3  under Rule 12(b)(6), the court must accept the allegations in the
4  complaint as true and draw all reasonable inferences in favor of
5  the plaintiffs.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974),
6  overruled on other grounds by Davis v. Scherer, 468 U.S. 183
7  (1984); Cruz v. Beto, 405 U.S. 319, 322 (1972).  To survive a
8  motion to dismiss, a plaintiff must plead "only enough facts to
9  state a claim to relief that is plausible on its face."  Bell
10 Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).
11        The plausibility standard "does not require detailed
12 factual allegations."  Ashcroft v. Iqbal, 556 U.S. 662, 678
13 (2009).  Nor does it "impose a probability requirement at the
14 pleading stage."  Starr v. Baca, 652 F.3d 1202, 1213 (9th Cir.
15 2011).  This standard "'simply calls for enough facts to raise a
16 reasonable expectation that discovery will reveal evidence' to
17 support the allegations."  Id. at 1217 (quoting Twombly, 550 U.S.
18 at 556).  Ultimately, "[d]etermining whether a complaint states a
19 plausible claim for relief will . . . be a context-specific task
20 that requires the reviewing court to draw on its judicial
21 experience and common sense."  Iqbal, 556 U.S. at 679.
22       A. Monell Liability
23        A municipality can be held liable under § 1983 only
24 "when execution of a government's policy or custom, whether made
25 by its lawmakers or by those whose edicts or acts may fairly be
26 said to represent official policy, inflicts the injury."  Monell
27 v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 693
28 (1978).  Before Iqbal, the Ninth Circuit required plaintiffs

4

facing a motion to dismiss in civil rights actions against local governments to "set forth no more than a bare allegation that government officials' conduct conformed to some unidentified government policy or custom." AE ex rel. Hernandez v. Cnty. of Tulare, 666 F.3d 631, 637 (9th Cir. 2012) (citing Shah v. Cnty. of Los Angeles, 797 F.2d 743, 747 (9th Cir. 1986)). Since Iqbal, the Ninth Circuit has held that "to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." Id.  These factual allegations must also "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Id.

### 1. Deprivation of a Constitutional Right

To establish municipal liability, a plaintiff must show "that [the plaintiff] possessed a constitutional right of which [he or she] was deprived." Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill, 130 F.3d 432, 438 (9th Cir. 1997) (quoting Oviatt By and Through Waugh v. Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992)); see also City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (holding there was no basis for liability against a municipality when the plaintiff had suffered no constitutional injury).  The Supreme Court has held that "proper analysis" requires courts "to separate two different issues when a § 1983 claim is asserted against a municipality: (1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so,

1    whether the [municipality] is responsible for that violation."
2    Collins v. City of Harker Heights, Tex., 503 U.S. 115, 120
3    (1992).
4           Here, plaintiffs allege that defendants deprived them
5    of their constitutional rights to protection from searches and
6    seizures without probable cause and from the use of excessive
7    force.  (See Compl. ¶¶ 201-19, 221-22.)
8                   a. Searches and Seizures Without Probable Cause
9           The Fourth Amendment to the United States Constitution,
10   applicable to the states through the Fourteenth Amendment,
11   prohibits searches and arrests without probable cause.  Beck v.
12   Ohio, 379 U.S. 89, 90-91 (1964); McKenzie v. Lamb, 738 F.2d 1005,
13   1007-08 (9th Cir. 1984).  "The long-prevailing standard of
14   probable cause protects 'citizens from rash and unreasonable
15   interferences with privacy and from unfounded charges of crime.'"
16   Maryland v. Pringle, 540 U.S. 366, 370 (2003) (quoting Brinegar
17   v. United States, 338 U.S. 160, 176 (1949)).
18          Plaintiffs allege that Officer Brzyscz and Officer
19   Nakamura submitted supporting affidavits that contained material
20   misstatements or omissions, without which there was no probable
21   cause to support the five searches.  (See Compl. ¶¶ 42-44, 46-
22   48.)  To prevail on this theory, plaintiffs "must make (1) a
23   substantial showing of deliberate falsehood or reckless disregard
24   for the truth, and (2) establish that but for the dishonesty, the
25   challenged action would not have occurred."  Butler v. Elle, 281
26   F.3d 1014, 1024 (9th Cir. 2002) (internal quotation marks
27   omitted); see also Ewing v. City of Stockton, 588 F.3d 1218, 1224
28   (9th Cir. 2009) (citing KRL v. Moore, 384 F.3d 1105, 1117 (9th

6

1    Cir. 2004)).  "If a party makes a substantial showing of
2    deception, the court must determine the materiality of the
3    allegedly false statements or omissions."  Ewing 588 F.3d at
4    1224; see also Butler, 281 F.3d at 1024 ("Materiality is for the
5    court, state of mind is for the jury.").  That is, "[i]f an
6    officer submitted false statements, the court purges those
7    statements and determines whether what is left justifies issuance
8    of the warrant."  Ewing 588 F.3d at 1224.  "If the officer
9    omitted facts required to prevent technically true statements in
10   the affidavit from being misleading, the court determines whether
11   the affidavit, once corrected and supplemented, establishes
12   probable cause."  Id.

13            In a conclusory fashion, plaintiffs allege only that
14   they "are informed and believe that the affidavit in support of
15   the search warrant contained material misstatements and
16   omissions; and upon exclusion of said statements, the affidavit
17   fails . . . to establish probable cause . . . ."  (Compl. ¶¶ 43,
18   46.)  Plaintiffs fail to identify the misstatements or omissions
19   they believe were material to a determination of probable cause.

20            This allegation fails to give the court any sense of
21   whether the alleged misstatements or omissions were material and
22   thus whether plaintiffs plausibly suffered the deprivation of a
23   constitutional right.  See Twombly, 550 U.S. at 570.
24   Accordingly, because plaintiffs have insufficiently supported a
25   deprivation of their Fourth Amendment right to be free from
26   searches and seizures without probable cause, plaintiffs have
27   also not stated a Monell claim based on this alleged injury.  See
28   Heller, 475 U.S. at 799.  The court will therefore grant Placer

                                    7

County, Sacramento County, and the City of Sacramento's motions to dismiss plaintiffs' third claim based on the theory of the lack of probable cause for the warrants.

### b. Excessive Use of Force

Under the Fourth Amendment, police may use only such force during a seizure as is objectively reasonable under the circumstances. See Graham v. Connor, 490 U.S. 386, 396-97 (1989). In Graham, the Supreme Court articulated factors that courts should typically consider in an excessive force analysis: "(1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight." Cameron v. Craig, 713 F.3d 1012, 1021 (9th Cir. 2013) (citing Graham, 490 U.S. at 396). In addition to these factors, "a court (or jury) may 'look to whatever specific factors may be appropriate in a particular case.'" Id. (quoting Franklin v. Foxworth, 31 F.3d 873, 875-76 (9th Cir. 1994)).

Plaintiffs allege that, during the five searches and seizures conducted simultaneously on November 20, 2013, officers[3]

---

[3] Plaintiffs' Complaint is not the model of clarity when identifying what officers took what actions. It consistently uses the phrase "officers, including but not limited to, Defendants Officer Brzyscz, Roseville Officers and Sacramento Officers." (See Compl. ¶¶ 75, 100, 104, 133, 160.) During oral argument on April 20, 2014, plaintiffs clarified their intent to include unidentified officers from each of the defendant municipalities as being present at each of the five searches. Such an allegation may support liability for each municipality based on a theory of integral participation. See Bravo v. City of Santa Maria, 665 F.3d 1076, 1089-90 (9th Cir. 2011) ("Section 1983 liability extends to those who perform functions 'integral' to an unlawful search, even if their individual actions do not

8

used excessive force and executed the searches and arrests "in a violent, abusive and unreasonable manner" that "intentionally humiliated and embarrassed plaintiffs." (Compl. ¶¶ 56, 81.) For example, plaintiffs allege that, during one of the raids, officers grabbed plaintiff Antonio Duran, threw him face down to the ground, and jammed a knee into his back. (Id. ¶ 119.) During another raid, the Complaint alleges that officers violently threw plaintiff Anita Felix to the ground and later bent plaintiff Alexis Sandoval's arm behind her back, causing her pain. (Id. ¶¶ 145, 154.) At a third raid, officers allegedly threw plaintiffs Juan Sanchez, Danny Garcia, and Destiny C. to the ground. (Id. ¶¶ 166-67, 171, 177.) The Complaint also consistently alleges that none of the plaintiffs were armed or attempted to threaten the officers, resist, or flee. (See id. ¶¶ 61, 83, 110, 119, 138, 146, 148, 166-67, 171, 177.)

During all five raids, officers also allegedly pointed firearms at plaintiffs, (see id. ¶¶ 62, 85, 87-88, 110-11, 127, 138, 143, 148, 166-69); destroyed or damaged property including furniture and various doors and locks, (see id. ¶¶ 106, 115, 136, 163); and forced plaintiffs to stand outside in the cold for up to four hours while officers conducted the searches, (see id. ¶¶ 89-90, 112). Accordingly, plaintiffs have alleged sufficient underlying facts at this stage to plausibly support a deprivation of the Fourth Amendment's protection against the use of excessive

---

themselves rise to the level of a constitutional violation."); see also James by James v. Sadler, 909 F.2d 834, 837 (5th Cir. 1990) (holding that, while officers did not physically perform the pat-down of plaintiff, because they provided back-up by remaining armed on the premises throughout the search their activities rendered them integral participants).

9

1  force.
2              2. Existence of a Policy or Custom
3           "For purposes of liability under Monell, a 'policy' is
4  'a deliberate choice to follow a course of action . . . made from
5  among various alternatives by the official or officials
6  responsible for establishing final policy with respect to the
7  subject matter in question.'"  Fogel v. Collins, 531 F.3d 824,
8  834 (9th Cir. 2008) (quoting Fairley v. Luman, 281 F.3d 913, 918
9  (9th Cir. 2002)).  Alternatively, "[a]n act performed pursuant to
10 a 'custom' that has not been formally approved by an appropriate
11 decision-maker may fairly subject a municipality to liability on
12 the theory that the relevant practice is so widespread as to have
13 the force of law."  Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397,
14 404 (1997) (citing Monell, 436 U.S. at 690-91).
15          Plaintiffs allege municipal defendants had in place
16 "policies, procedures, customs, and practices" that permitted or
17 encouraged the use of excessive force during the raids.  (Compl.
18 ¶ 222.)  Although the allegation of an official policy lacks
19 factual support, plaintiffs' Complaint does contain underlying
20 facts that might support the existence of a custom for purposes
21 of Monell.  Specifically, the fact that excessive force was
22 allegedly used against multiple individuals located at five
23 separate residences that were not in close proximity to one
24 another and that these raids were conducted at the same time by
25 different officers raises an inference that officers were acting
26 pursuant to an established custom of behavior.  See Brown, 520
27 U.S. at 404; Gillette v. Delmore, 979 F.2d 1342, 1349 (9th Cir.
28 1992) ("A section 1983 plaintiff may attempt to prove the

existence of a custom or informal policy with evidence of repeated constitutional violations."). The Complaint thus gives municipal defendants "fair notice" of the custom that plaintiffs challenge and, assuming these allegations as true, it plausibly states a claim for relief under Monell. See Hernandez, 666 F.3d at 637. Accordingly, the court will deny Placer County, Sacramento County, and the City of Sacramento's motions to dismiss plaintiffs' third claim as it relates to a custom encouraging the use of excessive force.

B. Plaintiffs' Sixth and Seventh Claims under State Law

Plaintiffs' sixth and seventh claims assert liability under state law for intentional infliction of emotional distress and negligence against all defendants. (Compl. ¶¶ 240-251.) As a prerequisite to asserting state law claims against a public entity or public employee, however, California's Tort Claims Act ("TCA"), Cal. Gov't Code §§ 810-978.8, requires a plaintiff to first present to the public entity "all claims for money or damages" against the local public entity or public employee. Id. § 905. "[F]ailure to timely present a claim for money or damages to a public entity bars a plaintiff from filing a lawsuit against that entity." California v. Super. Ct., 32 Cal. 4th 1234, 1239 (2004). A plaintiff must therefore "allege facts demonstrating or excusing compliance with the claim presentation requirement" in the complaint. Id. at 1242.

Plaintiffs allege that they complied with the California Tort Claims Act by sending a notice of intent to file suit to the City of Roseville on April 22, 2014, which denied their claims on May 29, 2014. (Compl. ¶ 5.) Plaintiffs fail to

make a similar allegation regarding Placer County, Sacramento County, or the City of Sacramento.  Plaintiffs thus request leave in their opposition briefs to withdraw their sixth and seventh claims under state law against Sacramento County and the City of Sacramento.  (See Pls.' Opp'n to Sacramento City at 2 (Docket No. 13); Pls.' Opp'n to Sacramento County at 12 (Docket No. 14).)  At oral argument on April 20, 2014, plaintiffs also requested leave to withdraw claims six and seven as against Placer County.  Plaintiffs further clarified that they wish to withdraw the state law claims against these defendants with prejudice.  Accordingly, the court will grant plaintiffs leave to withdraw, with prejudice, claims six and seven as against Placer County, Sacramento County, and the City of Sacramento.

III. Placer County's Request to Stay Proceedings

Placer County also asks the court to abstain from hearing claims against it because there are ongoing criminal proceedings against plaintiffs Samuel Duran and Antonio Duran.  (See Placer County's Mem. at 6.)  Although the county disavows reliance upon Younger v. Harris, 401 U.S. 37, 41 (1971) (abstaining from a case that might enjoin prosecution under a California criminal statute), the court will construe this request as invoking the Younger doctrine.  See Gilbertson v. Albright, 381 F.3d 965, 984 (9th Cir. 2004) (extending Younger to relief for damages, including "an action for damages pursuant to 42 U.S.C. § 1983").

Under Ninth Circuit precedent, "abstention in favor of state judicial proceedings is required if the state proceedings (1) are ongoing, (2) implicate important state interests, and (3)

provide the plaintiff an adequate opportunity to litigate federal claims." Hirsh v. Justices of Supreme Ct. of State of Cal., 67 F.3d 708, 712 (9th Cir. 1995) (citing Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982)). Placer County has not shown why this court should apply Younger abstention here, and it has failed to identify or describe the nature of the criminal proceedings pending against Samuel Duran and Antonio Duran.

Placer County states only that allegations relating to actions in the Placer County Jail "could become an issue depending on the scope of discovery permitted in the civil action" and "may ultimately relate to claims of improper searches in jail that might impact the criminal prosecution." (Placer County's Mem. at 6.) However, it does not appear that any of the plaintiffs in this action other than Samuel and Antonio Duran are parties to the pending state criminal proceedings. Moreover, plaintiffs state in their Complaint that

> This complaint does not seek to challenge the bringing of the criminal action against Samual Duran, or any other aspect within that criminal action, until such time as the case is over. The criminal case is thus mentioned herein only insofar as it relates to defendants motivation to raid and seize Plaintiffs' person, residences, vehicles and personal belongings.

(Compl. ¶ 52.) The County does not address this passage, nor does it explain how the claims of plaintiffs other than Samuel Duran and Antonio Duran will impact state proceedings. Absent a more specific showing of how plaintiffs' case will interfere with the unspecified state criminal proceedings, the court will decline to abstain.

13

IT IS THEREFORE ORDERED that:

(1) The motions of the County of Placer, the County of Sacramento, and the City of Sacramento to dismiss the third claim of the Complaint be, and the same hereby are, GRANTED with respect to plaintiffs' claim for municipal liability based on searches and seizures without probable cause; and DENIED with respect to plaintiffs' claim for municipal liability based on the use of excessive force;

(2) Plaintiffs' request for leave to withdraw claims six and seven with prejudice as against the County of Placer, the County of Sacramento, and the City of Sacramento be, and the same hereby is, GRANTED; and

(3) The County of Placer's request to stay these proceedings be, and the same hereby is, DENIED without prejudice.

Plaintiffs need not file an amended complaint, but should they choose to do so, plaintiffs have twenty days from the date this Order is signed to file an amended complaint that is consistent with this Order.

Dated: April 22, 2015

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE